**CABOT
MANTANONA LLP**
BankPacific Building, 2nd Floor
825 South Marine Drive Corps Drive
Tamuning, Guam 96913

Attorneys for **John S. Martinez**



FILED
DISTRICT COURT OF GUAM
SEP 3 0 2005
MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 00-00128-01 |
| | ) | |
| Plaintiff, | ) | **AMENDED OBJECTION OF** |
| | ) | **PRESENTENCE INVESTIGATION** |
| vs. | ) | **REPORT** |
| | ) | |
| JOHN S. MARTINEZ | ) | |
| | ) | |
| Defendant. | ) | |

Prior to January 2005, a district court had the discretion to "depart" downward from a guideline of the United States Sentencing guidelines if a case was atypical and differed from the norm. United States v. Cook, 938 F.2d 149, 152 (9th Cir. 1991) (citing U.S.S.G. Cg. 1, Pt. A § 4(b). The then stringent mandatory Guidelines delineated various bases for departures based on various characteristics of both a case itself and the defendant being sentenced.

In United States v. Booker/Fanfan, decided on January 12, 2005, the United States Sentencing Guidelines were deemed "advisory" by the United States Supreme Court. 125 S.Ct. 738. The Guidelines were stripped of their mandatory nature and

judges were required to merely consult the Guidelines when delineating a sentence. Judges were no longer bound by the strict confines of the Guidelines and were granted the authority to take factors that were not adequately accounted for in the Guidelines into consideration. Under the old sentencing regime, variances from the mandates of the Guidelines were called "departures" because they departed from the fixed range of the sentencing table. Included in the advisory status of the Guidelines are the exceptions that provide for departures from an otherwise applicable range.

18 U.S.C. § 3353(a) is referred to in <u>Booker</u> and much of the <u>post Booker</u> decisions as containing various factors, one of which is the guidelines, that must be considered in determining a sentence. The overriding principal mandates of 18 U.S.C. § 3353(a) requires that the courts impose a sentence "sufficient, but not greater then necessary" to comply with the four purposes of sentencing set forth in §3353(a)(2); retribution, deterrence, incapacitation and rehabilitation.

### 1. Defendant Cooperation and Substantial Assistance.

The defendant in this matter plead guilty on November 7, 2000. The defendant has been on pre-trial release for almost five (5) years and as described in paragraph eleven (11) by the probation has been compliant. It is unknown to the defendant or defense counsel as to any violation of the defendant's release conditions. Further, the defendant would assert that his cooperation with the Federal Government in this investigation involving several government corruption cases has been exemplary.

The defendant in this matter does not believe that the presentence investigation report is accurate or complete to provide the court with a true picture of the

Objection of Presentence Investigation Report
page 3

extensiveness of defendant's cooperation and other relevant factors in regards to defendant's sentence in this matter. The defendant's first objection is in regards to paragraph number nine (9). It is true that the defendant made a false statement by submitting a back dated bid in regards to a Federal Emergency Management Agency (FEMA) contract for bus shelters. In paragraph nine (9) the probation office only list the United States vs. Thomas V. Tanaka; U.S.D.C. Criminal Case Number 03-00032-001 and United States vs. Gil A. Shinohara, U.S.D.C. Criminal Case Number 03-00047-001 as relevant cases to defendant. Both Tanaka and Shinohara where former high ranking government officials and prominent individuals.

The defendant's cooperation with law enforcement was not limited to strictly the bus shelters issue or those defendants. The defendant also participated and helped the United States Government in securing convictions in United States of America vs. Jamie J. Sioco; U.S.D.C. Criminal Case Number 00-00133, and more importantly, United States of America vs. Austin (Sonny) Shelton, Criminal Case Number 01-00007. The defendant's cooperation was instrumental in acquiring the plea in regards to defendant Sioco in regards to bid projects at Paseo Park. Further, Defendant Martinez testified at the trial of another high ranking government official and helped secure the conviction of the former Director of Parks & Recreation Austin (Sonny) Shelton. The Shelton conviction resulted in what is believed to be the most severe sentence handed down for that type of crime in the United States.

The defendant truly believes his cooperation was exemplary and (led to the conviction of several high ranking officials) assisted Federal Law Enforcement in addressing their main priority "Governmental Corruption". Defendant Martinez had to

testify against two (2) of the jurisdiction's most powerful men. The court is well aware of the risk, personally, socially, professionally and safety wise that a person and his family must take in cooperating to the extent Mr. Martinez has in such difficult cases against powerful individuals.

**Minimal Role Participant.**

Defendant Martinez believes his role was that of a minimal participant.

§3B1.2.    Mitigating Role

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In case falling between (a) and (b), decrease by 3 levels.

It is clear that the defendant's role was less culpable than the others. In this case, the defendant was not privileged to know the terms of any agreement. He was not aware who was involved in the agreement. Defendant Martinez only complied because Mr. Shinohara was a friend who asked him to do him a favor. Defendant Martinez at the most hoped his help would be considered in the future. He was ignorant as to the size of the agreement. Commentary note - Number one (1) is directly on point "the Defendant's lack of knowledge or understanding the scope and structure of the enterprise and the activities of others is indicative of a role as minimal

participant." In this matter, Mr. Martinez only changed the date <u>on a legitimate</u> bid he was fully able to and willing to comply with. It is clear that reviewing the bid submitted that Defendant Martinez even did not know the size or scope of the project! See Defendant's Exhibit "A".

Lastly, Defendant's lack of involvement can be further seen by the defendant's lack of opportunity to handle or receive monies from the criminal act. Mr. Martinez received nothing, was not offer anything in exchange for submitting his bid which he had worked up and submitted in good faith. It is clear that Defendant Martinez was a minimal role participant entitled to a four (4) level departure.

### 3. Objections Calculation of Loss in Paragraph 28.

The defendant further objects to the additions and calculations contained in paragraph twenty-eight (28) of the presentence investigation report. The Probation Officer in this matter states "as directed by U.S.S.G. § 2F1.1(b)(1), if the value of the benefit to be received exceeded two thousand dollars ($2,000.00), increase the offense level although by the corresponding number of levels from the table in 2F 1.1."

The project was awarded to Thomas Tanaka at a price of one million nine hundred fifteen thousand two hundred dollars ($1,915,200.00). Probation states that Martinez helped Tanaka win the bid. This is completely wrong.[1] The Probation Officer then commences to add twelve offense levels to this. It is easy to see why probation would

---

[1] The two men Martinez and Tanaka in the past had been friends. The friendship ended bitterly. Defendant Martinez in no way intended or sought to help Thomas Tanaka. The acrimony between the two resulted in an extensive litigation case, Civil Action Affordable Home Builders Inc., et al. V. Pacific Acres Development, CV00082-96, in which Tanaka prevailed. The two men have nothing but hate for each other. As stated before, Mr. Martinez back dated his bid as a favor to Mr. Shinohara, who was a friend not Tanaka.

make such an easy assumption, the common scenario is that a defendant would make a fraudulent statement or commit a fraudulent act and then <u>himself</u> benefit by taking all or part of the improperly acquired profit.

The case before the Bar is not so clear. It is Defendant Martinez's position that there was in fact "no loss" which is attributable to him. It is clear that Mr. Martinez did not receive any money in regards to the bus shelter contract. Mr. Martinez had worked up his offer in good faith and fully capable to full fill the contract as offered. He then submitted the offer in good faith. Upon Shinohara's request he resubmitted the "same" bid with a prior date. At that point, he knew he was not going to get it but really nothing else. He only complied with Shinohara's request because Shinohara was a friend who was asking for a favor.

The United States Sentencing Guidelines § 2F1.1 took affect on November 1, 1987. The sentencing commission in 2001 deleted the guideline and consolidated it with provisions into § 2B1.1. In this case, the relevant dates in regards to defendant's crime occurred in December 1997 and January 1998. Defendant Martinez agrees that the United States Sentencing Guidelines § 2F1.1 is the correct guideline in defendant's case.

The commission's discussion of loss was contained in Application Note number seven (7) until November 1, 1998 when the commission re-designated that Application Note as application note eight (8). The commission initially used three (3) measures of loss in (b)(1): estimated loss, probable loss and intended loss. The commission dropped the phrase "estimated, probable or intended loss" from (b)(1), effective June 15, 1998. The commission effective on November 1, 1991, made a number of changes to the guidelines and commentary concerning loss. First, neither the

guideline nor the commentary referred to probable loss and only measures of loss were "intended loss" and "actual loss". The greater of the actual or intended loss is to be used. The commission also added additional factors to be considered in the common loss in certain situations; (1) misrepresentation of the value of an item or product substitution, (2) fraudulent loan application and contract-procurement case, (3) consequential damages in procurement-fraud and product-substitution cases, (4) the diversion of government programs benefits, and (5) Davis-Bacon Act cases. Thus, from November 1, 1991 procurement cases had to deal with either intended losses, or actual losses and <u>also</u> "consequential damages".

Martinez's position is not without basis in the U.S.S.G. which states when loss does overstate or understates the seriousness of Defendant's conduct, that Defendant would be entitled to an appropriate departure.

2F1.1 commenting note: 7(b)

> ....U.S.S.G. (b) "Where the loss determined above significantly understates or overstates the seriousness of the defendant's conduct, an upward or downward departure may be warranted."

U.S.S.G. 2F1.1 commenting note: 10
> ...."In a few instances, the loss determined under subjection (b)(1) may overstate the seriousness of the offense. This may occur, for example, where a defendant attempted to negotiate an instrument that was so obviously fraudulent that no one would seriously consider honoring it. In such cases, a downward departure may be warranted."

In <u>United States v. Redemann</u>, 295 F. Supp. 2d 887 (E.D. Wisc. 2003) The court in bank fraud case where guidelines were 18-24 months, for loss of 2.5 million, court departed downward two levels in part because loss significantly overstated seriousness

of offense. "Under application notes 8(b) and 11, the court may depart when the amount of loss determined under § 2F1.1(b)(1) significantly overstates the seriousness of the defendant's offense. U.S.S.G. § 2F1.1 cmt. n. 8(b) & 11 (1998)." Here defendant submitted false invoices for work supposedly done on the bank, but he did in fact do some valuable work for the bank which was not adequately recognized by the loss figure.

### a. Actual Loss

Actual loss has been interpreted to be the net loss. Net loss is calculated by subtracting from the total amount of the fraudulent scheme from the value of any goods or services which the victim may have received in return from the defendant or which the victim was able to recover or keep by her own endeavors.

In U.S. vs. Alborz, 818 F. Supp. 1306, 1308 (N.D. Cal 1993), the Court held:

> "Because the specific offense characteristics of the guidelines seek to capture the <u>actual loss</u> from the criminal activity, any specific offense characteristics which includes in the amount of loss the value added by defendant's legal activities in relation to the car overstates the seriousness of the loss, and thus, the crime. This is precisely the mistake made here by the preparer of the Presentence Report".

In this matter, the bus shelters were contracted for and fully and completely built. The shelters are in existence today and still benefitting the people of this jurisdiction. There is no indication that the shelters were overpriced, defective or requiring repair or replacement. Thus, Defendant Martinez would argue the actual or net loss is zero. The total amount in the crime was realized with the required product and no known defects or overcharges is known to Defendant Martinez. Under § 2F1.1, amount of loss caused by defendant's fraudulent scheme was amount of

money invested minus amount returned to investor, U.S. vs. Ortland, 109 F. 3d 539 (9th Cir. 1997).

### b. Intended Loss

"Intended loss" was the total amount of the property intended to be fraudulently taken by defendant. It appears that intended loss is used when the crime is not completed or the government seeks to increase the defendant's punishment. On its face, it is clear that Defendant Martinez did not fraudulently intend to take any monies or property. Further, as previously addressed Defendant Martinez never intended or sought to help or benefit his former partner and now adversary Thomas Tanaka. Thus, the intended loss would be zero. Further, it is clear that size and scope of the bus shelter contract was not possessed by Defendant Martinez. Without the knowledge of the project how could the defendant possess the requisite intent to deprive the victim.

In U.S. vs. Galliano, 977 F2d 1350, (9th Cir. 1992). In that case, the Defendant used false names and social security numbers to obtain credit, money and services from lending institutions. In that matter, the lending institutions were able to recover part of their losses. Giving the evidence presented, the District Court had found that the Defendant under no intention of repaying the loans.

In comparing the cases cited with the case before the bar, it is clear in this matter the defendant did not receive any benefits from the use of his false statement. Further, in calculating the intended loss the Courts looked to the intent of the defendant to determine subjectively what they intended to do in regards to repayment.

It was obvious from the action of the defendants that they intended not to repay any of the monies. Thus, the Court inflicted and used the intended amounts which is a total amount of loss. In U.S. vs. Shaw, 3 F3d 311 (9th Cir. 1993), the Court held that term intended loss does not necessarily mean the face value of a fraudulently obtained loan, but rather is the amount which the defendant subjectively intended to take from the victim. In that case the defendant fraudulently obtained a line of credit from a bank for two million dollars ($2,000,000.00) by misrepresenting financial statements. The District Court sentenced the defendant based on the full two million dollars ($2,000,000.00) line of credit. In this matter, it is clear that Mr. Martinez did not intend to receive any monies or any part of the losses from FEMA in this case. Lastly, he did not make his false statement financing the amount at stake with the intent to not repay it. Thus, subjectively he did not intend to take anything from the victim and thus his intended loss in this matter should be zero.

c.  **Consequential Losses**

Lastly, Defendant Martinez would like to address the issue of consequential losses. The defendant in this matter does not know of any consequential losses which could be attributed and used to calculate his loss. Consequential losses are defined in USSG 2F1.1 Application Note 7b(c). Consequential damages are damages that are reasonablely foreseeable with the example the loss increase the government reasonably foresee costs in making substitute transactions and handling or disposing of the products delivered or retrofitting a product so that it can be used for its intended purpose, plus the government's reasonably foresee cause for rectifying the actual or

potential disruption to government operations caused by the products substitution. In this matter, the defendant does not know of any defects, complaints or deficiencies in the bus shelters as they were built. Further, the defendant does not know any need to work with the government to rebuild or replace any of the shelters.

### d. In the Interest of Justice

The bus shelter matter did go to trial in regards to the bus shelters in <u>United States vs. Gil A. Shinohara</u>, Criminal Case Number 03-00047-001. In that matter, the jury acquitted Mr. Shinohara of all the related criminal charges in regards to the bus shelters. It is important to understand that Mr. Shinohara was the Acting Director of the Department of Public Works who asked Mr. Martinez to back date the letter to be used for an act to later be deemed by a jury as not a criminal act. Defendant Martinez has admitted his responsibility in this case by providing the government with assistance in prosecuting multiple high ranking and power defendants. It would be unfair and unjust that the defendant have to shoulder a heavier sentence than of the parties who a greater role in the alleged criminal act.

Defendant Martinez would also like to point out that for several years he has been suffering from a mental condition chronic anxiety disorder. [2]The defendant in this matter has been under medication and doctor supervision since 1990. Further, the defendant in this matter would like the Court to take into consideration that the defendants prolonged presentencing cooperation has caused him extreme mental

---

[2] The defendant's mental illness is addressed but insufficiently in paragraph 61.

suffering due to his illness he was constantly pondering any post condition action this Court might take. Defendant Martinez would like the Court to know that the exemplary cooperation put forth by Mr. Martinez came at a high price of extreme mental suffering and ask the Court to consider that as punishment enough in this case.

Further, Defendant Martinez in this matter has suffered severely financially during his presentence period. Mr. Martinez who is a contractor has been unable to get any bonding due to his case, which has prohibited his participant in many major projects. This has caused him to lose large amounts of potential income causing financial hardship to him and his family. Again, Defendant Martinez would like the Court to take these additional hardships into consideration in determining his sentence.

### e. Defendant Martinez Guideline Calculation

Defendant Martinez asserts that pursuant to USSG § 2F1.1(a) that his base offense offer would be six (6) with a criminal history of category one (1). Secondly, that pursuant to § 2F1.1(b)(1) that loss is determined to be zero dollars. The defendant has accepted responsibility for his action and is entitled to a two level departure pursuant to USSG § 3E1.1(a). The defendant argues that he is entitled to a defense level reduction pursuant to USSG § 3B1.2 seeking a reduction of four (4) levels and at a minimum of two (2) level reduction. If the Court grants the defendant a maximum reduction for a minimal role participant then he will be at an offense level zero, and if the Court grants him a minor role participant he will be at an offense level two (2). Lastly, the defendant asserts that he has earned and should benefit fully from any substantial assistance motion made by the United States Government in exchange for his cooperation in the numerous cases in which he has assisted the United States Government.

## CONCLUSION

Defendant Martinez respectfully request the court to consider the factors raised in the above sentencing memorandum when deciding a fair and reasonable sentence pursuant to 18 U.S.C. §3553(a).

The Defendant in this case has cooperated with Federal Officials since 2000. Mr. Martinez's cooperation has resulted in the conviction and acquisition by the United States of America of the most severe sentences for an anti trust violation in <u>United States vs. Austin (Sonny) Shelton</u>, Criminal Case Number 01-00007. The Defendant has earned and should benefit from his cooperation and respectfully request the court grant the United State Attorney's downward departure motion and grant the defendant a sentence of probation.

Dated: 9/30/05 , 2005

CABOT MANTANONA, LLP
Attorneys for **John S. Martinez**

By: _____
RAWLEN M T MANTANONA, ESQ.